## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

JOSEPH GIOVINAZZO,

        Plaintiff,

   v.

JOSEPH A. DEANGELO, JR.,

        Defendant and Third-
        Party Plaintiff,

   v.

MARIO SAGGESE, MARIO
COMMISSO, and SALVATORE
PAPANDREA,

        Third-Party Defendants.

No. 1:20-cv-15894

**OPINION**

**APPEARANCES**:

Rick A. Steinberg
PRICE MEESE SHULMAN & D'ARMINIO, P.C.
50 Tice Boulevard, 3rd Floor
Woodcliff Lake, NJ 07677

   *On behalf of Plaintiff Joseph Giovinazzo.*

Jared T. Hay
SALMON, RICCHEZZA, SINGER & TURCHI LLP
1700 Market Street, Suite 3110
Philadelphia, PA 19103

Joseph L. Turchi
SALMON, RICCHEZZA, SINGER & TURCHI LLP
Tower Commons
123 Egg Harbor Road, Suite 406
Sewell, NJ 08080

   *On behalf of Defendant and Third-Party Plaintiff Joseph A. DeAngelo, Jr.*

Jason Tenenbaum
THE LAW OFFICE OF JASON TENENBAUM, P.C.
595 Stewart Avenue, Suite 400
Garden City, NY 11530

    *On behalf of Third-Party Defendant Mario Saggese.*

Todd D. Muhlstock
THE MUHLSTOCK LAW FIRM, P.C.
100 Garden City Plaza, Suite 500
Garden City, NY 11530

    *On behalf of Third-Party Defendants Mario Commisso and Salvatore Papandrea.*

**O'HEARN, District Judge.**

## INTRODUCTION

This matter comes before the Court on the Motion to Dismiss the Second Amended Third-Party Complaint filed by Third-Party Defendants Mario Saggese, Mario Commisso, and Salvatore Papandrea ("Third-Party Defendants"). (ECF No. 57). The Court did not hear oral argument pursuant to Local Rule 78.1. For the reasons that follow, Third-Party Defendants' Motion is **GRANTED IN PART** and **DENIED IN PART**.

## I.    BACKGROUND

In or around 2010 or 2011, Defendant and Third-Party Plaintiff Joseph DeAngelo ("DeAngelo") was introduced to Plaintiff Joseph Giovinnazo ("Plaintiff") and Third-Party Defendants as potential investors in a real estate development project that DeAngelo was pursuing in Woolwich Township, New Jersey. (Second Amend. Third-Party Compl., ECF No. 51, ¶¶ 18–23). In the years that followed, after further discussions and due diligence, Plaintiff and Third-Party Defendants agreed to raise and contribute $3 million to finance the rest of the project in exchange for a 50% ownership stake. (ECF No. 51, ¶¶ 24–27). To this end, the parties formed Vistarra Holdings, LLC ("Vistarra") and established necessary accounts. (ECF No. 51, ¶ 27).

Vistarra's Operating Agreement became effective on August 7, 2014. (ECF No. 51, ¶ 30; Exh. C, ECF 51-1 at 14–39).[1] DeAngelo, through his own limited liability company took 50% ownership, Saggese took 25%, Commisso and Papandrea through their own limited liability company took 20%, and Giovinazzo took 5%. (ECF No. 51, ¶ 31; Exh. C, ECF 51-1 at 39). Saggese and DeAngelo were named Vistarra's managers. (ECF No. 51, ¶ 32; Exh. C, ECF 51-1 at 24).

Over the next two years, Plaintiff and his wife remitted, via three separate checks, payments of $536,000, $410,000, and $74,500 to Vistarra, for a total investment of $1,020,500. (ECF No. 51, ¶ 37; Exh. E, 51-1 at 45–51). These funds were paid directly to Vistarra; no money was provided to DeAngelo personally as a loan or otherwise. (ECF No. 51, ¶¶ 37–38). To make these payments and the remainder of their agreed-upon capital contributions, DeAngelo alleges that Plaintiff and Third-Party Defendants secured loans "from an individual or individuals who can best be described as loan sharks." (ECF No. 51, ¶¶ 41–43).

In the end, the rest of the capital never materialized, and all the investors suffered losses to the extent of their investment. (ECF No. 51, ¶¶ 44–46). The project was abandoned in or around 2016. (ECF No. 51, ¶¶ 44–46).

After abandoning the project, DeAngelo alleges that Plaintiff and Third-Party Defendants have contacted him numerous times seeking to recoup their losses. (ECF No. 51, ¶ 47). He further alleges that during these contacts, Plaintiff and Third-Party Defendants acknowledged that he was not obligated to insure their investments. (ECF No. 51, ¶ 47). All the same, individual members of the group allegedly told DeAngelo that they needed the money back because others were seeking to collect the money from them. (ECF No. 51, ¶ 48). For example, Saggese claimed Giovinazzo

---

[1] For clarity, when referring to the Exhibits DeAngelo attached to the Second Amended Third-Party Complaint, (ECF No. 51-1), the Court uses the page numbers of the .PDF document, rather than those of the underlying documents.

placed a lien on his home and one of the supposed loan sharks had placed a lien on Giovinazzo's home. (ECF No. 51, ¶ 49). Plaintiff and Third-Party Defendants asked DeAngelo multiple times to meet with them at a business location in New York, the owner of which may have been one of these lenders. (ECF No. 51, ¶ 52).

In an effort to end these contacts, DeAngelo instructed his counsel to prepare a promissory note ("the Promissory Note"), executed on September 13, 2018, in which he promised to pay Giovinazzo $2,046,726 over the following two years. (ECF No. 51, ¶¶ 55–56; Exh. A, ECF No. 51-1 at 9–10). DeAngelo alleges that this sum—which is significantly greater than the net contribution to the investment project—was calculated to ensure Plaintiff and Third-Party Defendants would have sufficient funds to pay back the "unscrupulous individuals" from whom they had secured loans. (ECF No. 51, ¶ 56).

Beginning the following month, DeAngelo made a series of payments to Plaintiff, only one of which appears to conform with the terms of the Promissory Note, which called for monthly payments of $10,000. (ECF No. 51, ¶ 59; Exh. A, ECF No. 51-1 at 9–10). Those payments were made as follows—

> a. October, 2018 – paid $10,000
> b. November, 2018 to November, 2019 – paid $8,500 monthly
> c. No payment was made for December, 2019
> d. January, 2020 - two payments were made for $7,100 and $5,500
> e. No payment was made for February, 2020
> f. March, 2020 – two payments were made for $5,540 and $5,000
> g. No payments were made for April to June, 2020
> h. July, 2020 – two payments were made for $5,540 and $5,000
> i. No payments have been made since July, 2020

(ECF No. 51, ¶ 59).

Before and since executing the Promissory Note, DeAngelo alleges that Plaintiff and Third-Party Defendants told him that negative consequences—"both physical and economical"—would befall them all if they did not get their money back to repay their lenders. (ECF No. 51, ¶ 63). In

Summer and Fall 2020, Commisso called DeAngelo multiple times and left voicemails asking to meet to discuss the situation. (ECF No. 51, ¶¶ 68–70). DeAngelo ultimately agreed and, accompanied by a business partner and another associate, met with Commisso at a diner in Bordentown, New Jersey, in October 2020. (ECF No. 51, ¶¶ 72–74). DeAngelo alleges that Commisso brought several others to the meeting who waited in the car and whose physical presence DeAngelo believes was meant to intimidate him. (ECF No. 51, ¶ 74).

Ultimately, DeAngelo alleges that Plaintiff and Third-Party Defendants never loaned him any money, nor provided any consideration of value for his signing of the Promissory Note. (ECF No. 51, ¶¶ 75–77). Instead, they have worked to harass him to pay back money they lost in an investment which he never guaranteed. (ECF No. 51, ¶ 78).

## II.   **PROCEDURAL HISTORY**

On November 12, 2020, Plaintiff filed this action against DeAngelo, alleging DeAngelo's breach of contract and unjust enrichment, and seeking damages amounting to his account stated and attorneys' fees.[2] (Compl., ECF No. 1). DeAngelo sought the Court's leave to file a pre-answer motion to dismiss but was instead directed after a motion conference to respond with an answer. He did so on January 19, 2021, raising a number of counterclaims. (Answer, ECF No. 14). DeAngelo simultaneously filed a Third-Party Complaint, impleading the Third-Party Defendants. (ECF No. 15).

After the vacation of an earlier-entered default against Third-Party Defendants Commisso and Papandrea, (ECF Nos. 25–26), Third-Party Defendants sought leave to file a motion to dismiss the Third-Party Complaint. (ECF No. 31). Instead, the Court granted DeAngelo leave to amend

---

[2] Plaintiff erroneously lists "account stated" and "attorneys' fees" as separate causes of action in his Complaint, when they are in fact requested remedies for the other counts. (ECF No. 1, ¶¶ 24–28).

the Third-Party Complaint, which he did on May 11, 2021. (ECF No. 41). The Third-Party Defendants responded with a Motion to Dismiss. (ECF No. 42). DeAngelo then sought and was again granted leave to amend the Third-Party Complaint, which was filed on June 28, 2021. (ECF No. 51).

Third-Party Defendants then filed the present Motion to Dismiss for failure to state a claim, (ECF No. 57), to which DeAngelo responded, (ECF No. 59), and Third-Party Defendants replied, (ECF No. 60).

### III.    LEGAL STANDARD

To state a claim, a complaint needs only to provide a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Although "short and plain," this statement must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quotations, alterations, and citation omitted). "[A] plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ." *Id.* (citations omitted). Rather, a complaint must contain sufficient factual allegations "to state a claim to relief that is plausible on its face." *Id.* at 570.

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court must accept the complaint's well-pleaded allegations as true and view them in the light most favorable to the plaintiff. *Evancho v. Fisher*, 423 F.3d 347, 351 (3d Cir. 2005). Through this lens, the court then conducts a three-step analysis. *Malleus v. George*, 641 F.3d 560, 563 (3d Cir. 2011). "First, the court must 'tak[e] note of the elements a plaintiff must plead to state a claim.'" *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 675 (2009)). Next, the court should identify and disregard those allegations that, because they are no more than "the-defendant-unlawfully-harmed-me

accusation[s]," are not entitled to the assumption of truth. *Iqbal*, 556 U.S. at 678; *Malleus*, 641 F.3d at 563. Finally, the court must determine whether "the facts alleged in the complaint are sufficient to show that the plaintiff has a 'plausible claim for relief.'" *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S. at 679). A facially plausible claim "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 210 (quoting *Iqbal*, 556 U.S. at 678).

On a Rule 12(b)(6) motion, the "defendant bears the burden of showing that no claim has been presented." *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). The court may only consider the facts alleged in the pleadings, any attached exhibits, and any matters of judicial notice. *S. Cross Overseas Agencies, Inc. v. Kwong Shipping Grp. Ltd.*, 181 F.3d 410, 426 (3d Cir. 1999).

## IV.   <u>DISCUSSION</u>

DeAngelo raises several claims in his ten-count Second Amended Third-Party Complaint, (ECF No. 51), including: (a) usury ("Count I"); (b) economic coercion or duress ("Counts II and III"); (c) unjust enrichment ("Count IV"); (d) conversion and civil conspiracy ("Counts V and VI"); (e) fraud and misrepresentation ("Counts VII and VIII"); and (f) Racketeer Influenced and Corrupt Organizations ("RICO") Act, 18 U.S.C. § 1961 *et seq.*, and RICO conspiracy claims ("Counts IX and X"). (ECF No. 1-1). This Court has jurisdiction under 28 U.S.C. § 1332 and § 1367(a). For the reasons that follow, the Court concludes that only DeAngelo's conversion and civil conspiracy claims—Counts V and VI—survive Rule 12(b)(6) scrutiny.

### A.  **Usury ("Count I")**

The Court addresses first Count I, DeAngelo's usury claim, and does so simply: DeAngelo cannot state a usury claim against Third-Party Defendants because they are not holders of the Note

at issue. Under New Jersey law,[3] to support a usury claim a party must "establish three elements: (1) a loan of money, (2) an absolute obligation to repay the principal and (3) the exaction of a greater compensation than that allowed by law for the use of the money." *MacDonald v. Cashcall, Inc.*, 333 F.R.D. 331, 349 (D.N.J. 2019) (citing *Dopp v. Yari*, 927 F. Supp. 814, 820 (D.N.J. 1996)). The parties spill a great deal of ink debating whether the alleged exchange of money between them was a loan or an investment, and what the proper method of calculating the interest rate should be. (Third-Party Def.'s Br. at 16–20; DeAngelo's Br. at 8–11). But this all misses the point: Third-Party Defendants are not holders of this Note, (Exh. A, ECF No. 51-1 at 9–10); they have no right to demand (re)payment from DeAngelo; DeAngelo bears no obligation to pay them anything. *See* N.J. STAT. ANN. § 12A:3-301 (identifying those entitled to enforce negotiable instruments such as promissory notes). Accordingly, DeAngelo cannot establish—*at least*—the second element of a usury claim. Therefore, Count I must be dismissed.

## B. Economic Duress or Coercion ("Counts II and III")

The Court turns next to Counts II and III, DeAngelo's claims of economic duress or coercion. These claims fail for substantially the same reason his usury claim does: Third-Party Defendants are not holders of the Promissory Note. The economic duress doctrine—which applies to negotiable instruments under N.J. STAT. ANN. § 12A:3-305(a)(1)—allows courts to "invalidate an otherwise enforceable contract" when one party assents "to an improper or wrongful demand by another under circumstances in which the former has little choice but to accede to the demand, *i.e.*, to do what he otherwise would not have done." *Cont'l Bank of Pa. v. Barclay Riding Acad.,*

---

[3] The Promissory Note's choice-of-law clause indicates that New Jersey law governs it, (Exh. A, ECF No. 51-1 at 2), and the parties appear to agree that New Jersey law applies. More specifically, however, the Note is a negotiable instrument within the meaning of N.J. STAT. ANN. § 12A:3-104, and thus the Court interprets it under the Uniform Commercial Code as adopted by the State of New Jersey. N.J. STAT. ANN., tit. 12A, subtit. 1.

*Inc.*, 459 A.2d 1163, 1174–76 (N.J. 1983). But even assuming Third-Party Defendants' conduct here was wrongful, *there is no contract for the Court to invalidate*. Third-Party Defendants are not holders of the Promissory Note, (Exh. A, ECF No. 51-1 at 9–10); they have not sought and cannot seek to enforce it; DeAngelo bears no obligation to pay them anything. Absent a contract to enforce, DeAngelo's economic duress claims fail, and Counts II and III must also be dismissed.

### C.  Unjust Enrichment ("Count IV")

Next, the Court addresses Counts IV, DeAngelo's unjust enrichment claim.[4] To state a claim for unjust enrichment, a plaintiff must demonstrate "'both that defendant received a benefit and that retention of the benefit would be unjust.'" *Castro v. NYT Television*, 851 A.2d 88, 98 (N.J. App. Div. 2004) (quoting *VRG Corp. v. GKN Realty Corp.*, 641 A.2d 519, 526 (N.J. 1994)). As a quasi-contractual remedy, courts only impose liability when a "'plaintiff expected remuneration from the defendant, or if the true facts were known to plaintiff, he would have expected remuneration from defendant, at the time the benefit was conferred.'" *Id.* (quoting *Callano v. Oakwood Park Homes Corp.*, 219 A.2d 332, 334–35 (N.J. App. Div. 1966)). When "'no direct relationship existed between the parties which would create a reasonable expectation of benefit,'" a plaintiff's unjust enrichment claim cannot be maintained. *Id.* at 98–99 (quoting *Fasching v. Kallinger*, 510 A.2d 694, 699 (N.J. App. Div. 1986)).

It is not entirely clear to the Court what benefit DeAngelo alleges he conferred upon Third-

---

[4]  As a basis for this claim and his conversion claim, *see infra* Section D, DeAngelo alleges that he has made payments to Plaintiff and Third-Party Defendants separate from and "not . . . in accordance with any Promissory Note." (Second Amend. Third-Party Compl., ECF No. 51, ¶ 107). Accordingly, the Court analyzes the claims as they have been pled: under New Jersey common law, not the Uniform Commercial Code. (ECF No. 51, ¶¶ 106–14).

Party Defendants. DeAngelo alleges that he made a series of sporadic payments to Plaintiff,[5] (ECF No. 51, ¶ 59)—which, while accepting DeAngelo's allegations as true, the Court notes look eerily similar to partial performance under the terms of the Promissory Note, (Exh. A, ECF No. 51-1 at 9–10). Regardless, DeAngelo paid this money to *Plaintiff*, not to Third-Party Defendants. Whether or not Plaintiff in turn sent any of this money to Third-Party Defendants, any unjust benefit DeAngelo conferred was onto Plaintiff. And to the extent DeAngelo could have expected remuneration, it too would have been from Plaintiff. That DeAngelo failed to see a return on the parties' joint investment project does not create an example of unjust enrichment, (DeAngelo's Br. at 16); that is merely the cost of doing business. Absent a direct relationship that contemplates remuneration, DeAngelo's unjust enrichment claim fails and Count IV must be dismissed.

### D. Conversion and Civil Conspiracy ("Counts V and VI")

The Court now turns to DeAngelo's conversion and civil conspiracy claims, Counts V and VI. Under New Jersey common law, conversion is "an unauthorized assumption and exercise of the right of ownership over goods or personal chattels belonging to another, to the alteration of their condition or the exclusion of an owner's rights." *Barco Auto Leasing Corp. v. Holt*, 548 A.2d 1161, 1164–65 (N.J. App. Div. 1988). Put differently, conversion is "to exercise a dominion or control over the goods which is in fact inconsistent with the plaintiff's rights." PROSSER & KEETON ON TORTS § 15 (5th ed. 1984). Conversion is an intentional tort in that defendants must intend to exercise control over the property, but they need not intend to act wrongfully. *Id.*; *LaPlace v. Briere*, 962 A.2d 1139, 1144 (N.J. App. Div. 2009) (endorsing the treatise's definition). Although conversion usually concerns personal chattels, it has been applied to money as well. *See Chi. Title*

---

[5] The Second Amended Complaint alleges that DeAngelo made these payments to the "Giovinazzo Group" as a collective enterprise. (ECF No. 51, ¶¶ 85–87). However, there are no allegations that DeAngelo paid any money to Third-Party Defendants directly.

*Ins. Co. v. Ellis*, 978 A.2d 281, 284 (N.J. App. Div. 2009) (affirming summary judgment when defendants unknowingly received fraudulently-obtained money but presented no evidence to suggest that they received the money in exchange for fair value).

Accepting DeAngelo's allegations as true, he has sufficiently pled his conversion claim. DeAngelo alleges that any money he paid Plaintiff was not paid in accordance with the Promissory Note, but rather was the result of fraud, and that Plaintiff later transferred the fraudulently-obtained funds to Third-Party Defendants. (ECF No. 51, ¶¶ 60, 85–87, 126–32). Whether Plaintiff—who has not moved to dismiss DeAngelo's parallel counterclaims against him—committed fraud remains to be seen; the Court need not decide that issue now.[6] But if Plaintiff transferred fraudulently-obtained funds to Third-Party Defendants and Third-Party Defendants knew of the fraud or received the money without a fair-value exchange, DeAngelo states a claim at this point to recover the money from them. *See Chi. Title Ins.*, 978 A.2d at 284. Having alleged that they were (at least) aware of the fraud, DeAngelo has adequately pled a conversion claim.

For substantially the same reasons, DeAngelo's conspiracy claim also survives Rule 12(b)(6) scrutiny. "[A] civil conspiracy is a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages." *Banco Popular N. Am. v. Gandi*, 876 A.2d 253, 263 (N.J.

---

[6] DeAngelo's claim of fraud against Plaintiff is not presently before the Court. To state a claim for conversion against Third-Party Defendants, DeAngelo need only allege that Plaintiff transferred money to them, title to which actually belonged to DeAngelo. *See, e.g.*, *LaPlace*, 962 A.2d at 1144. That is all the Court assumes here. It draws no conclusion with respect to whether Plaintiff committed fraud, it does not apply the heightened pleading standard of Rule 9(b), and it only accepts as true DeAngelo's allegation that title to the money remained his. If upon some future motion or at trial it is determined that this is not the case, DeAngelo's conversion claim against Third-Party Defendants will fail.

2005) (quotations omitted). "Most importantly, the gist of the wrong is not the unlawful agreement, but the underlying wrong which, absent the conspiracy, would give a right of action." *Id.* at 177–78 (quotations omitted).

Having adequately alleged a conversion claim, DeAngelo's additional allegations that Third-Party Defendants agreed among themselves and with Plaintiff to accomplish the conversion are enough to state a civil conspiracy claim, (ECF No. 51, ¶¶ 115–32). Accordingly, Counts V and VI survive.

### E.  Fraud and Misrepresentation ("Counts VII and VIII")

Next, the Court turns to Counts VII and VIII, DeAngelo's claims of fraud and misrepresentation. Federal Rule of Civil Procedure 9(b) requires parties to plead "with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). Under this heightened pleading standard, plaintiffs must demonstrate "'(1) a material misrepresentation of a presently existing or past fact; (2) knowledge or belief by the defendant of its falsity; (3) an intention that the other person rely on it; (4) reasonable reliance thereon by the other person; and (5) resulting damages.'" *Banco Popular*, 876 A.2d at 260 (quoting *Gennari v. Weichert Co. Realtors*, 691 A.2d 350, 367 (N.J. 1997)).

Here, too, it is unclear to the Court what the fraudulent misrepresentation DeAngelo alleges Third-Party Defendants made to him, let alone one on which he relied. In his Brief in Opposition to the present Motion, DeAngelo directs the Court to paragraphs forty-seven through seventy-nine of the Second Amended Complaint to find the alleged facts to support his fraud claim. Unfortunately, this direction provides no greater clarity. Did Third-Party Defendants fraudulently misrepresent that they needed DeAngelo's money to pay off the "unscrupulous individuals" from whom they had allegedly secured illicit loans? (ECF No. 51, ¶ 56). No, because DeAngelo

represents on information and belief that these statements were true. (ECF No. 51, ¶ 64). Perhaps more generally Third-Party Defendants fraudulently misrepresented that DeAngelo owed them money? No, that cannot be it either, because DeAngelo makes clear that he has never believed this to be true—he has never relied on any such representation. (ECF No. 51, ¶¶ 75–78). The fact that the Court is left guessing as to the specific facts to support a fraud claim shows that DeAngelo has not met Rule 9(b)'s heightened pleading standard. Having failed to demonstrate at least elements one and four of common law fraud, DeAngelo has not stated a claim and Count VII must be dismissed.

For the same reasons, Court VIII, alleging misrepresentation, must also be dismissed. The primary difference between intentional fraud and negligent misrepresentation is the scienter element. *See Kaufman v. i-Stat Corp.*, 754 A.2d 1188, 1196 (N.J. 2000) ("Because negligent misrepresentation does not require scienter as an element, it is easier to prove than fraud."). To prove negligent misrepresentation, a plaintiff must show "[a]n incorrect statement, negligently made and justifiably relied upon, [and] . . . economic loss or injury sustained as a consequence of that reliance." *H. Rosenblum, Inc. v. Adler*, 461 A.2d 138, 142–43 (N.J. 1983), *superseded on other grounds by* N.J. STAT. ANN. 2A:53A–25. But as explained above, it is not clear to the Court what incorrect statement Third-Party Defendants made on which DeAngelo relied. Having not pled one, his misrepresentation claim fails and Count VIII must also be dismissed.

### F. RICO and RICO Conspiracy ("Counts IX and X")

Finally, the Court addresses DeAngelo's RICO and RICO conspiracy claims, Counts IX and X. Properly-pled RICO claims allege more than mere fraud; rather, they allege that defendants have built an entire enterp rise based on fraud. *E.g.*, *Gary Miller Imports, Inc. v. Doolittle*, No. 11-00178, 2020 WL 7027483, at *4 (W.D. Pa. Nov. 11, 2020). To state a RICO claim, a plaintiff

"must allege: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Kolar v. Preferred Real Estate Investments, Inc.*, 361 Fed. App'x 354, 362 (3d Cir. 2010) (citing *Sedima, S.P.R.L. v. Imrex Co.*, 473 U.S. 479, 496 (1985)). "[A] pattern of racketeering activity requires at least two predicate acts of racketeering activity, which include indictable offenses under the federal . . . wire fraud statute[.]" *Id.*

To plead a wire fraud offense, RICO plaintiffs must show (1) "a scheme or artifice to defraud for the purpose of obtaining money or property," (2) "participation by the defendant with specific intent to defraud," and (3) "use of the mails or wire transmissions in furtherance of the scheme." *Nat'l Sec. Sys. v. Iola*, 700 F.3d 65, 105 (3d Cir. 2012). Specific intent to defraud can be "found from a material misstatement of fact made with reckless disregard for the truth." *United States v. Coyle*, 63 F.3d 1239, 1243 (3d Cir. 1995). The defendant's fraudulent scheme "need not be fraudulent on its face but must involve some sort of fraudulent misrepresentations or omissions reasonably calculated to deceive persons of ordinary prudence and comprehension." *United States v. Pearlstein*, 576 F.2d 531, 535 (3d Cir. 1978). Further, as with common law fraud, plaintiffs must plead these elements with particularity as required by Federal Rule of Civil Procedure 9(b).

As an alternative to racketeering activities, a RICO claim can instead find its foundation in defendants' collection of unlawful debt. 18 U.S.C. § 1962(c). In the RICO context, unlawful debt collection refers to debts incurred through illegal gambling activity or in connection with the business of illegal gambling, or through a loan at a usurious rate where the rate is twice the enforceable limit. § 1961(6).

Unfortunately for DeAngelo, his pleadings—the Second Amended Complaint and his

RICO Statement[7]—cannot survive Rule 12(b)(6) scrutiny. As explained above, the Court is left guessing what material misstatement of fact Third-Party Defendants made to DeAngelo that could support his claims of fraud. At the least, he has not pled any fraudulent statements—let alone a pattern of them—with the particularity required by Rule 9(b). Without these allegations, DeAngelo cannot demonstrate the wire fraud offenses that he alleges serve as the racketeering activities supporting his RICO claim.

DeAngelo's unlawful debt collection allegations are no more availing. As also explained above, DeAngelo cannot state a usury claim because he has not pled a loan of money to him from Third-Party Defendants. With respect to the Promissory Note, Third-Party Defendants are not holders and cannot enforce it. (Exh. A, ECF No. 51-1 at 9–10). Outside of the Note, DeAngelo does not allege that Third-Party Defendants loaned him money, but rather served as co-investors in the real estate development project. (Second Amend. Third-Party Compl., ECF No. 51 at 75–78). Absent a debt to enforce, DeAngelo obviously cannot demonstrate unlawful debt collection. Because DeAngelo cannot demonstrate a pattern of racketeering activity or unlawful collection of debt, he cannot state a claim under RICO.

And for substantially the same reasons, his RICO conspiracy claim fails. To state a RICO conspiracy claim, a plaintiff must allege "(1) an agreement to commit the predicate acts; and (2) knowledge that those acts were part of a pattern of racketeering activity conducted in such a way as to violate section 1962(a), (b), or (c)." *Rose v. Bartle*, 871 F.2d 331, 365–67 (3d Cir. 1989). But where a plaintiff cannot demonstrate the elements of a predicate act—such as a wire fraud offense

---

[7] A RICO Case Statement is "a pleading that may be considered part of the operative complaint for the purposes of a motion to dismiss." *Allen Neurosurgical Assocs., Inc. v. Lehigh Valley Health Network*, 99-04653, 2001 WL 41143, at *3 n.1 (E.D. Pa. Jan. 18, 2001) (citing *Lorenz v. CSX Corp..* 1 F.3d 1406, 1413 (3d Cir. 1993)).

or unlawful debt collection—the plaintiff cannot state a RICO conspiracy claim. *See, e.g.*, *Steco, Inc. v. S&T Mfg., Inc.*, 772 F. Supp. 1495, 1503 (E.D. Pa. 1991) ("A claim cannot be made under section 1962(d) in the absence of a viable claim under section 1962(a), (b), or (c)."). No underlying offense, no conspiracy to commit one. And that is precisely the case here. Accordingly, DeAngelo cannot state a RICO claim or RICO conspiracy claim, and Counts IX and X must be dismissed.

## CONCLUSION

For the foregoing reasons, Third-Party Defendants' Motion to Dismiss is **GRANTED IN PART** and **DENIED IN PART**. (ECF No. 57). Counts I through IV and VII through X of the Second Amended Complaint are accordingly **DISMISSED**. The Motion is **DENIED** with respect to Counts V and VI. An appropriate Order accompanies this Opinion.

 */s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**